# In the United States Court of Federal Claims

## No. 22-650T
### Filed: December 19, 2022

```
* * * * * * * * * * * * * * * * * *    *
                                       *
   CHRIS DAVID CURIE,                  *
                                       *
              Plaintiff,               *
                                       *
   v.                                  *
                                       *
   UNITED STATES,                      *
                                       *
              Defendant.               *
                                       *
                                       *
* * * * * * * * * * * * * * * * * *    *
```

**Chris David Curie**, pro se, St. Petersburg, FL.

**Richard J. Markel**, Trial Attorney, Tax Division, Court of Federal Claims Section, United States Department of Justice, Washington, D.C., for defendant. With him were **G. Robson Stewart**, Assistant Chief, Court of Federal Claims Section, **David I. Pincus**, Chief, Court of Federal Claims Section, and **David A. Hubbert**, Deputy Assistant Attorney General, Tax Division, United States Department of Justice.

## O P I N I O N

**HORN, J.**

Pro se plaintiff, Chris David Curie, filed a complaint in the United States Court of Federal Claims. In response to plaintiff's complaint, defendant moved to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) (2021) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Plaintiff's complaint, which is difficult to understand, appears to be alleging entitlement to certain monies, only some of which are allegedly due from the federal government. Plaintiff states this court has jurisdiction to hear his case because "[t]his matter involves U.S. Federal Person 'CHRIS DAVID CURIE' and various agencies, departments, substitute trustees of the UNITED STATES. This is an internal administrative matter of a US Estate/Inter vivos Trust."[1] Plaintiff alleges three

---

[1] Capitalization, grammar, punctuation, abbreviations, spelling, emphasis, and choice of words when quoted in this Opinion are as they originally appear in the parties' submissions to the court. Some of the documents received by the court, however, are illegible and are noted with the bracketed word "[illegible]."

counts: (1) violations of 26 U.S.C. § 61(a)(4)[2] and 26 U.S.C. § 6065[3] sufficient to reverse <u>Curie v. Comm'r</u>, No. 6557-19 (T.C. Jul. 25, 2019);[4] (2) "Breach of Trust," based on a

---

[2] The statute at 26 U.S.C. § 61(a) (2018) defines "gross income" under the Internal Revenue Code, and is not a jurisdictional granting statute. The statute at 26 U.S.C. § 61(a) provides:

> **(a) General definition.**--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
>> (1) Compensation for services, including fees, commissions, fringe benefits, and similar items;
>> (2) Gross income derived from business;
>> (3) Gains derived from dealings in property;
>> (4) Interest;
>> (5) Rents;
>> (6) Royalties;
>> (7) Dividends;
>> (8) Annuities;
>> (9) Income from life insurance and endowment contracts;
>> (10) Pensions;
>> (11) Income from discharge of indebtedness;
>> (12) Distributive share of partnership gross income;
>> (13) Income in respect of a decedent; and
>> (14) Income from an interest in an estate or trust.

26 U.S.C. § 61(a) (emphasis in original).

[3] The statute at 26 U.S.C. § 6065 (2018) states "[e]xcept as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury," (alteration added), is not a jurisdictional granting statute.

[4] <u>Curie v. Commissioner</u>, No. 6557-19, was filed by Mr. Curie at the United States Tax Court, and was dismissed on July 25, 2019 for lack of jurisdiction. The Tax Court order states in its entirety:

<u>**ORDER OF DISMISSAL FOR LACK OF JURISDICTION**</u>

This case is before the Court on respondent's motion to dismiss for lack of jurisdiction, filed June 6, 2019. The motion seeks to dismiss this case on the grounds that: (1) the petition was not timely filed for tax year 2013; (2) no notice of deficiency was issued to petitioner for tax years 2000 through 2012 and 2014 through 2019; (3) no notice of determination concerning collection action was issued to petitioner for tax years 2000 through 2019;

Dekalb County, Indiana Court's accounting and alleged mishandling plaintiff's mother's mortgage foreclosure; and (3) "Breach of Trust" because plaintiff "provided appointment letters to the alleged custodian of unclaimed property requesting an accounting of the estate/inter vivos trust" but received no response.[5] As relief, plaintiff seeks:

A. Issue an order to cease and desist collection on "lien", return funds taken in error, remove the Notices from the County, assign a private Treasury Agent to assist in settling accounts.
B. Order an accounting of Case 17D01-1802-MF-000015 in Dekalb County, Indiana and issue an order for recoupment of non-abandoned securities to the heir.
C. Certify the Trust indentures for the record and provide an accounting of securities held in trust.
D. Petitioner now demands maximum allowable damages and reasonable fees pursuant at Section 813 15 U.S.C. §§ 1692, and for such other treble or punitive relief as the court deems just and proper.

---

and (4) respondent has not made any other determination with respect to tax years 2000 through 2019 that would confer jurisdiction on the Court. Taking into account representations contained in the petition and petitioner's Notice to Dismiss for Lack of Jurisdiction and for the reasons set forth in respondent's motion, it is,

ORDERED that respondent's motion is granted. It is further ORDERED that with respect to each year placed in issue in the petition, this case is dismissed for lack of jurisdiction upon the ground stated in respondent's motion.

**(Signed) Maurice B. Foley**
**Chief Judge**

ENTERED:   **JUL 25 2019**

(capitalization and emphasis in original).

[5] In addition to the above captioned case and Curie v. Commissioner, No. 6557-19, Mr. Curie has filed multiple cases in Federal District Court, Bankruptcy Court, and State Court, including Curie v. Obama, et al., No. 15-171 (N.D. Ind. 2015); Curie v. Obama, et al., No. 15-16 (N.D. Ind. 2015); Curie v. Commissioner, No. 3820-19 (T.C. filed Feb. 21, 2019); In re: the Estate of Chris David Curie, No. 13-BK-47868 (Bankr. N.D. Ill. filed Dec. 15, 2013); In re: the Estate of Chris David Curie, et al., No. 12-BK-29434 (Bankr. N.D. Ill. filed Jul. 25, 2012); Curie v. Heard, No. 17D02-1712-SC-001641 (DeKalb Super. Ct. Feb. 21, 2018); In re: the Estate of Chris David Curie, No. 17D02-1508-EU-000076 (DeKalb. Super. Ct. Jan. 15, 2016).

Along with his complaint, plaintiff attached numerous confusing attachments, proposed notices, orders, including a notice for a default judgment. The first attachment is a June 6, 2022 letter from plaintiff to the United States Court of Federal Claims titled: "Notice-to-agent-is-notice-to-principal-and-notice-to-principal-is-notice-to-agent. This first attachment appears to include three proposed orders. The first of the three proposed orders is titled "ORDER FOR DEFAULT JUDGEMENT," while the second and third proposed orders are both titled "ORDER." The fifth document is titled "Acknowledgement of Trust Indentures," also with the heading "Notice-to-agent-is-notice-to-principal-and-notice-to-principal-is-notice-to-agent." The sixth attached document is titled "BILL OF LADING." The document again contains the language "Notice-to-agent-is-notice-to-principal-and-notice-to-principal-is-notice-to-agent" and includes a table of contents titled "Cargo Manifest." The seventh attached document, dated March 15, 2016, is titled "NOTICE OF TRUST" and was referenced in plaintiff's "BILL OF LADING" as Attachment A: "Notices to IRS showing good faith effort to obtain certificate of assessment." This document contains a list of nineteen "notices" from the plaintiff to various individuals and entities regarding "Illinois Cook County Notice of Lien SN933257413 Now RE 1032700113US [illegible] Illinois DuPage Notice of Lien SN 933257413 Now RE103270013US [illegible] and Illinois Lake County Notice of Lien SN 93325781 Now RE103270013US[illegible]." The eighth attached document is the July 25, 2019 "ORDER OF DISMISSAL FOR LACK OF JURISDICTION" by The United States Tax Court in case 6557-19, (quoted above) involving petitioner Chris David Curie and respondent, the Commissioner of the Internal Revenue Service. This document also was referred to in plaintiff's "BILL OF LADING" document as Attachment B: "US TAX COURT ORDER." The ninth attached document, labeled "Attachment C," is the document referred to in plaintiff's "BILL OF LADING" as "Common Law Consent to Judgment." Dated June 17, 2021, the document seems to have been authored by the plaintiff and lists "Office of the Indiana Attorney General," "Department of the Treasury Internal Revenue Service," "The Commissioner of the Indiana State Department of Natural Resources," "Illinois Department of Natural Resources," "Commissioner," "IRS Commissioner," "AFLAC WORLDWIDE," "Farmers and Merchant Bancorp, Inc.," "David M. Findlay President and Chief Executive Officer Lakeland Financial Corporation," and "TALCOTT RESOLUTION LIFE." The tenth attached document is a December 9, 2021 notice from the Social Security Administration to plaintiff of payment withholding. The notice states, "We are writing to you about your Social Security benefits. . . . We changed the amount we withhold from your monthly payment to pay your debt to the IRS." (alteration added). The eleventh attached document is a December 26, 2018 notice from the U.S. Department of the Treasury, Bureau of the Fiscal Service to plaintiff. The document states in relevant parts: "The U.S. Department of the Treasury, Bureau of the Fiscal Service (Fiscal Service), applied all or part of your payment to delinquent debt that you owe. . . . If you believe that your payment was applied in error, you would like to resolve your debt, or you have questions about your debt or outstanding balance, contact the agency." (alteration added). The twelfth attached document is labeled "Attachment F" and was referred to by plaintiff's "Bill of Lading" as "True Bill for damages." The document contains the heading "Good faith estimate and True bill to: UNITED STATES" and the subheading "atachments refer to items Bill of Lading number 911499944314212247335." The thirteenth attached document is a December 3, 2021 order by DeKalb County Superior

Court of Indiana Judge Adam C. Squiller in the case of <u>Wells Fargo Bank, N.A. v. Dorothy A. Curie</u>, 17D01-1805-MF-015 (DeKalb Super. Ct. Sept. 14, 2018). The document is labeled "Attachment G" and was previously referred to by plaintiff's "Bill of Lading" as "Dekalb County denial of accounting." The fourteenth attached document is a December 22, 2021 letter from plaintiff to one "Holly Albright," who, apparently, was involved in the trust plaintiff alleges was mishandled in <u>Wells Fargo Bank, N.A. v. Dorothy A. Curie</u>, 17D01-1805-MF-015  (DeKalb Super. Ct. Sept. 14, 2018).[6] Plaintiff accuses the letter's recipient of "extortion . . . under the color of official right" and an "appalling betrayal of the public trust." The fifteenth attached document is a mostly illegible and unidentifiable webpage. The document was previously referred to by plaintiff as "Summary of Court Judgement." The words "Wells Fargo Bank v. Dorothy A. Curie," "Inactive," and "Summary judgement entered" are decipherable. The document contains the handwritten equation "76,000.00–67,694.17=8305.83 DUE." The sixteenth attached document is a May 29, 2018 letter from Wells Fargo Bank, NA to Dorothy A Curie with the subject line "Your insurance refund check Mortgage account number: 0362331191 Client 936 Property address: 605 E Third Street[,] Auburn IN 46706." The seventeenth attached document is a partially illegible "Sheriff's Deed" from DeKalb County, Indiana, dated November 29, 2016. The eighteenth attached document is titled "Good faith accounting absent one from the County." It lists various accounting items and expenses totaling, including a multiplier for treble damages, more than seven and a half million dollars. The nineteenth attached document is a letter from plaintiff to the "Office of the Indiana Attorney General." The letter contains the header "Notice-to-agent-is-notIce-to-principal-and-notice-to-principal-is-notice-to-agent" and lists various statutes and Ecclesiastical law to support plaintiff's claims regarding him as the holder of a trust.

In response to plaintiff's complaint, on August 15, 2022, defendant filed a motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. According to defendant's motion to dismiss, "[w]hen jurisdiction is lacking, 'the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting <u>Harris v. United States</u>, 113 Fed. Cl. 290, 292 (2013)). The motion to dismiss has been fully briefed. During the course of the briefing on defendant's motion to dismiss and subsequently, plaintiff has tried to file numerous additional documents with the court, none of which were in conformance with the Rules of this court. Moreover, plaintiff continued to submit documents of the United States Court of Federal Claims, even after the court issued an Order instructing plaintiff not to file such additional documents until after the motion to dismiss was decided.

## DISCUSSION

The court recognizes that plaintiff in the above captioned case is proceeding <u>pro se</u>. When determining whether a complaint filed by a <u>pro se</u> plaintiff is sufficient to invoke review by a court, a <u>pro se</u> plaintiff is entitled to a more liberal construction of the <u>pro se</u> plaintiff's pleadings. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (requiring that allegations contained in a <u>pro se</u> complaint be held to "less stringent standards than

---

[6] Plaintiff, however, references "Case 17-D01-1802-MF-000015."

formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (first three alterations in original; remaining alterations added) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Kelley v. Secretary, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of . . . jurisdictional requirement[s] and set a different rule for pro se litigants only." (alterations added)); Hartman v. United States, 150 Fed. Cl. 794, 796 (2020); Schallmo v. United States, 147 Fed. Cl. 361, 363 (2020); Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004))); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (alteration in original) (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (quoting Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992–93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing Foster v. Chatman, 136 S. Ct. 1737, 1745 (2016)); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007); Haddad v. United States, 152 Fed. Cl. 1, 16 (2021); Fanelli v. United States, 146 Fed. Cl. 462, 466 (2020). The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); see also Me. Cmty. Health Options v. United States, 140 S. Ct. 1308, 1327–28 (2020); United States v. Mitchell, 463 U.S. 206, 216 (1983); Sanford Health Plan v. United States, 969 F.3d 1370, 1378 (Fed. Cir. 2020); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Gulley v. United States, 150 Fed. Cl. 405, 411 (2020); Kuntz v. United States, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States. . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Olson v. United States, 152 Fed. Cl. 33, 40–41 (2021); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), appeal dismissed, No. 2019-2213, 2020 WL 8254415 (Fed. Cir. Jan. 29, 2020). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007–08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007.

Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401–02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (omissions in original; alterations added); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009); Szuggar v. United States, 145 Fed. Cl. 331, 335 (2019). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts).")); see also Me. Cmty. Health Options v. United States, 140 S. Ct. at 1327–28. "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Olson v. United States, 152 Fed. Cl. at 41; Downey v. United States, 147 Fed. Cl. 171, 175 (2020) ("And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation." (citing Cabral v. United States, 317 F. App'x 979, 981 (Fed. Cir. 2008))); Jackson v. United States, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006)).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any

defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9–10 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2021); Fed. R. Civ. P. 8(a)(1), (2) (2022); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Plaintiff's complaint does not meet the basic requirements of a proper complaint because plaintiff's complaint does not set out the necessary elements of a complaint establishing this court's jurisdiction. In Count One, plaintiff seems to be seeking to litigate issues he tried to bring previously in the United States Tax Court case, Curie v. Commissioner, No. 6557-19. Apparently, after his case was dismissed at the United States Tax Court, plaintiff also sought to reopen the case and then to file a new case at the United States Tax Court. In Count One, plaintiff also raises other issues including for the removal of lien notices and for a vague violation of the United States Constitution. Count One of plaintiff's complaint is reproduced in its entirety below, for the purposes of demonstrating how difficult the allegations in plaintiff's complaint are to follow:

<u>Notice-to-agent-is-notice-to-principal-and-notice-to-principal-is-notice-to-agent</u>

We are seeking assistance in resolving a few items where we have exhausted our administrative remedy. I hereby claim, declare and state under oath the following:

1.      This issue involves a series of "Notices of Lien" sent by various agents of the IRS/Department of Treasury for the tax years 2009 and 2013.
2.      Over the past 12 years we have sent dozens of requests for verification / certification of this indebtedness which have been **ignored. (See attachment A)** The section we rely upon is:

9

a.      IRC 6065; U.S.C. Title 26 INTERNAL REVENUE CODE, Chapter 61, subchapter A, Part IV  without this document signed under penalty perjury, nothing is enforceable: 26 U.S. Code§ 6065. Verification of returns

Except as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is **made under the penalties of perjury.**

3.      This caused us to bring an action against the IRS Commissioner in 2019 via cause # 6557-19, fully incorporated by reference, and can be viewed here: https://dawson.ustaxcourt.gov/case-detail/6557-19 (complete evidence file docketed on 11/5/2021 and available upon request)

4.      The adjudication confirmed that **no proper notice of determination existed**, therefore, **there is no controversy**, and if no controversy, there is no jurisdiction and the case was dismissed for lack of jurisdiction. (see attachment B)

5.      Several 12277 applications for withdrawal of notice of tax lien notices were sent to the Centralized Lien Office along with the court order. All were **ignored**, and our follow up inquiries were **ignored**. There is no evidence that these notices are not irreparably damaging the estate and no evidence that we are not titled to libel damages.

6.      In March 2012, we began receiving new notices of lien, which we consider an Act of Barratry. We noticed the Agent, the IRS Commissioner, the Secretary of Treasury, the Social Security Administration, Talcott Annuity, and various other parties who were contacted by the IRS agent to allow all parties time to provide any new certification and provide any evidence of our involvement in Alcohol, Tobacco or Firearms. This notice was **ignored.**

7.      When the granted time lapsed, we gave them another opportunity to cure any trespass and to respond. They did not respond. This notice was **ignored.**

8.      This resulted in a common law judgement of June 17, 2021 where all parties tacitly **agreed there was no evidence of a proper certification** of indebtedness, nor ATF involvement. (see attachment C)

9.      Yet, enforcement actions have been taken against the Social Security account and Talcott. These actions appear to violate General Orders 100 of the Lieber Code[7] and appear to be in violation of the

---

[7] Although unclear and not relevant to plaintiff's case, it appears "General Orders 100 of the Lieber Code" refers to an 1863 document from the War Department, General Orders No. 100, Instructions for the Government of Armies of the United States in the Field, which sets out rules of conduct during hostilities for Union soldiers during the United States Civil War. See General Orders No. 11: The Lieber Code, Avalon Project, Yale Law School Lillian  Goldman Law Library, https://avalon.law.yale.edu/19th_century/lieber.asp9 (last visited Dec. 19, 2022); Jeny Gesley, The "Lieber Code" – the First Modern Codification

Constitution; unlawful taking of property without just cause. This is causing damage to me and my family as we are (attempting) to live on the remaining $361 per month. Social Security is a return of premium for my labor, which appears to be tax and levy exempt. (see attachment D & E)

10.     In August 2021 we sent the US Tax Court a petition to reopen the case based upon newfound evidence.

11.     In January 2022, the US Tax Court notified us that they had received documents and denied the request to reopen the case as they maintain that the 2019 judgement was final and nothing new can be added to the case. We tend to agree, why waste time adjudicating something which has been established, we have no problem with the courts position on that and we accept the judgement.

12.     In February 2022, we sent a NEW emergency petition to open a **new** US Tax case, which was **ignored**. It is logged into case 6557-19. We included reference to proof of the collection activity which was sent to the court October 2021, showing that a controversy now exists regarding taxes. Despite their statement that nothing can be added to the prior case, notice was docketed in the prior case.

13.     In March 2022, we sent another NEW emergency petition to open a **new** case which was **ignored.** It is logged into case 6557-19. How did we give up our right to petition the government?

14.     On April 8, 2022 we sent a notice to clarify that we were attempting to open a NEW case, and not add to the old case[8] (**That notice did not appear in the court docket until May 13, 2022.**)

15.     April 21st, 2022, we called the US Tax Court (202 521-0789) and spoke with a Clerk named Karen who stated that she was instructed to inform me that the decision in case 6557-19 was final and they were not entertaining any new actions regarding this matter. This tends to confirm that there is not controversy, and any enforcement is ultra vires.

16.     On May 5th, 2022, we asked a member of Congress to assist in obtaining the tax assessment or to abate this nuisance. Their office was responsive as they produced the evidence of collections within 24 hours, (see attachment D & E) and within one week had a letter from the Tax Court Judge confirming that the court had dismissed the case for lack of jurisdiction. However, they ran into a brick wall when trying to obtain the actual assessment and have been told that they will get a response in 60-90 days. If collection has begun, that certificate should be at their fingertips.

17.     On may 17th, 2022, we sent another petition to open a new case along with qualifying letters showing enforcement actions were obtained from Congress. This was delivered May 23rd, 2022, 7:12 am.

---

of the Laws of War, Libr. Cong. (Apr. 24, 2018), https://blogs.loc.gov/law/2018/04/the-lieber-code-the-first-modern-codification-of-the-laws-of-war (last visited Dec. 19, 2022).

[8] Curie v. Comm'r, No. 6557-19.

18.     We contacted the US Tax Court two days later to confirm receipt and get a status as to when the new case would be docketed. They confirmed receipt, but could not guarantee a time, indicated that they had about 500 new docket requests and it might be a few weeks.

19.     If there is a new certificate conforming to IRC 6065, we have no evidence of it after over 200 days. We have sent approximately 6 letters to the agencies since the tax case judgement to try to obtain what should be readily available since collection activity has begun, and we have been **ignored**.

20.     Eleven days after my check or renewal of a private mailbox was received, we were noticed by the Postal Agent on May 11, 2022 that they were unable to renew the mailing location citing various "laws". This is a capricious action without prior notice of intent. We wrote to the corporation asking them to show these laws, which they did not, and 10 days later they changed the story to "the local franchisee has the right to deny service and he was not renewing". I wonder if the hundreds of fraudulent tax lien notices influenced his decision. We are operating under injury and present this true bill in commerce (see attachment F)

(emphasis in original).

In its motion to dismiss plaintiff's case for lack of subject matter jurisdiction, defendant argues that the United States Court of Federal Claims lacks jurisdiction under the Tucker Act to hear the claims plaintiff included in his complaint, and that plaintiff's "remaining allegations do not approach a plausible claim for relief." Defendant argues that plaintiff's complaint "is not merely defective, it is incomprehensible." (internal citation omitted). According to defendant, "[p]laintiff is required to plead facts that establish jurisdiction and show that he has a cause of action. He has done neither. Even the most generous construction of his opaque tax allegations shows that jurisdiction is lacking. His remaining allegations do not approach a plausible claim for relief." (alteration added).

Defendant, citing Blueport Co., LLC v. United States, 533 F.3d at 1383, argues that the Tucker Act does not provide jurisdiction for plaintiff's claims and argues that plaintiff has not identified "a separate source of substantive law that creates a right to money damages." Defendant further asserts that the dismissal of plaintiff's prior United States Tax Court petition "is not a jurisdictional basis for this Court to hear the case," relying on Gilliard v. United States, 145 Fed. Cl. 598, 605, 609 (2019). Defendant also argues:

Plaintiff's claim appears to be based on a notice of federal tax lien, which he characterizes as a "trespass," an "Act of Barratry, a violation of "General Orders 100 of the Lieber Code," and an unconstitutional taking. These actions, he suggests, are "irreparably damaging the estate." The nature of the "estate" (whether a decedent's estate, a real property interest, or something else) and its owner remain a mystery.

To the extent that plaintiff seeks relief on a theory of trespass, this Court lacks jurisdiction because the action is a tort claim. See Outlaw v. United

12

States, 116 Fed. Cl. 656, 662 (2014). If he seeks damages resulting from an unauthorized collection action or for failure to release a lien, only a federal district court would have jurisdiction over those claims. I.R.C. §§ 7432(a), 7433(a); Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002). Or, if plaintiff challenges the imposition of the tax liens, jurisdiction is lacking because a wrongful levy action must be brought by a third party and only in a district court. I.R.C. § 7426(a)(1); Zolman v. United States, 17-1901T, 2018 WL 1664690, at 1–2 (Fed. Cl. Apr. 6, 2018). Finally, the fact that the Tax Court previously dismissed one or more of plaintiff's petitions is not a basis for bringing the case in this Court. See, e.g., Gilliard [v. United States], 145 Fed. Cl. [598,] 605, 609 [(2019)].

(internal citations omitted; alterations added).

In response to plaintiff's second and third counts, both titled "Breach of Trust," defendant states that both "fail to meet the pleading standard and should be dismissed for failure to state a claim upon which relief can be granted." According to defendant, with regard to the second count, "[e]ven if everything [plaintiff] alleges is true, plaintiff states no claim for relief against the United States. Whatever causes of action (if any) he or his mother's estate may have under Indiana law should be handled in Indiana's courts." (alteration added). Also according to defendant, "attachment C reveals that the purported judgment was written by plaintiff himself, ostensibly against Illinois'' and Indiana's respective Departments of Natural Resources, IRS Commissioner Rettig, AFLAC, and many other unrelated people." Also with regard to the third count, defendant states that "Count 3 is incoherent. The only remotely factual allegation is that at some point plaintiff sent 'appointment letters' to someone, and Indiana did not respond. The Complaint then veers off into rhetorical questions and discussion about the Uniform Trust Code."

To further confuse the allegations in plaintiff's complaint, in response to defendant's motion to dismiss, plaintiff argued the following:

> **Now comes, *Curie, Chris David, sui juris, real party in interest, co-beneficiary, heir to several Estates* (my mother and father, and their mother and fathers) as recorded on Dekalb County Indiana ,Book G32 page 71 by special visitation as next friend, to speak for the living beneficiaries who are not enemy combatants, but merely peaceful men and women and to respond to the motion to dismiss for lack of jurisdiction. We are not proceeding pro se.**

> * * *

> We concur with Mr. Market's statement that tort claims would be handled by the federal district court, however we are not bringing charges against any of the agents / actors referenced under a tort claim action. They are not party to this action and our claim is merely against our interests in the trust certificates sufficiently identified. It appears that these accounts were

administered under several presumptions among which are "finding" abandoned property.

Our interests in these certificates have been authenticated by the Department of State which certify that the attached entity is "titled to the full faith and credit" of the United States of America/ UNITED STATES OF AMERICA. These certificates are under the care and custody of various agencies, property custodians, which are under the jurisdiction of the United States, United States of America, and or UNITED STATES, UNITED STATES OF AMERICA and the military. This is evidence that jurisdiction exists for this court. It is self evident as these certificates were likely used to open this case. These certificates are bonded, secured by tontine pledges and certificates of record in the care and custody of agents of the United States, and or UNITED STATES, UNITED STA TES OF AMERICA making the United States/ United States of America, and or UNITED STATES, UNITED STATES OF AMERICA the secured party and ultimate trustees who must take cognizance of our interests. We now clarify our intent in this matter as merely a claim for our interests in these certificates and any minor accounts associated with them nunc pro tunc for each account.

The court instructed our response to address jurisdiction only, This should be sufficient to proceed and we affirm our original claim for emergency distributions for damages if appropriate, or for maximum distributions under the spendthrift account to be made for the provision care and maintenance of the living beneficial interest holders as they are operating under extreme duress.

(stars in original).

Although plaintiff alleges that "[t]his matter involves U.S. Federal Person 'CHRIS DAVID CURIE' and various agencies, departments, substitute trustees of the UNITED STATES. This is an internal administrative matter of a US Estate/Inter vivos Trust," plaintiff does not allege facts to bring plaintiff's Count One within the jurisdictional ambit of the Tucker Act. In his first count, plaintiff focuses largely on his interactions with the United States Tax Court and notices of lien he received as well as deductions from his social security benefits, which do not establish jurisdiction for review in this court. As correctly described by defendant, this court does not have jurisdiction over claims "sounding in tort," 28 U.S.C. § 1491(a)(1), and to the extent that plaintiff seeks relief on the theory of trespass as a tort, the claim must be dismissed for lack of subject matter jurisdiction. See 28 U.S.C. § 1491(a); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv. Inc. v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.), reh'g denied (Fed. Cir. 1997) ("Because Brown and Darnell's complaints for fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc

suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Outlaw v. United States, 116 Fed. Cl. at 662 ("[F]raud and coercion are tort claims—over which this court has no Tucker Act jurisdiction. The Federal Circuit affirmed this court's dismissal for lack of jurisdiction over similar tort claims"); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 565 U.S. 1153 (2012); Kant v. United States, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion' and 'fraud' sound in tort. . . . "); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) ("[P]laintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception . . . . The Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort.").

To the extent plaintiff alleges trespass as a criminal act, this court lacks subject matter jurisdiction to adjudicate such claims. The jurisdiction of the United States Court of Federal Claims does not include jurisdiction over criminal causes of action. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); see also Starnes v. United States, 162 Fed. Cl. 468, 474 (2022) ("This Court lacks jurisdiction over any criminal law claims."); Francis v. United States, 155 Fed. Cl. 78, 82 (2021); Whiteford v. United States, 148 Fed. Cl. 111, 122 (2020) ("[T]he Court of Federal Claims . . . lacks jurisdiction over criminal acts." (alterations added)); Feist v. United States, 148 Fed. Cl. 168, 171 (2019); Zainulabeddin v. United States, 138 Fed. Cl. 492, 505 (2018) (quoting Joshua v. United States, 17 F.3d at 379) ("[I]t is well established that the Court of Federal Claims 'has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code.'").

Further, to the extent that plaintiff is challenging the imposition of a tax lien, the Internal Revenue Code provides:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

26 U.S.C. § 7426(a)(1) (2018). Accordingly, plaintiff's allegations regarding the imposition of a tax lien must be brought in a United States District Court. To the extent that plaintiff seeks damages for an allegedly unauthorized collection action or for failure to release a lien, the Internal Revenue Code provides:

> If any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7432 (2018). Therefore, plaintiff's allegations regarding improper liens must be brought in a United States District Court and not in this court. Moreover, this court lacks subject matter jurisdiction to hear Count One, insofar as it is brought as a way to

review the case of Curie v. Commissioner, No. 6557-19, which was dismissed by the United States Tax Court. See Beatty v. United States, 121 Fed. Cl. 283, 286 (2015); Wong v. United States, 49 Fed. Cl. 553, 554–55 (2001).

Defendant also correctly notes in its motion to dismiss plaintiff's complaint that to file a tax claim in the United States Court of Federal Claims, "full payment of tax and filing an administrative claim for refund are prerequisites to suit under the Tucker Act." (citing 26 U.S.C. § 7422(a); Roberts v. United States, 242 F.3d 1065, 1067–68 (Fed. Cir. 2001); Shore v. United States, 9 F.3d 1524, 1526 (Fed. Cir.1993)). The relevant provision of the Internal Revenue Code provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (2018). While plaintiff seems to have delivered a copy of his self-authored "Common Law Consent to Judgement" to the Commissioner of the IRS, that document is not a "claim for refund or credit . . . duly filed . . . according to the provisions of law in that regard, and the regulations of the Secretary." Id. Although plaintiff filed with this court a document containing instructions he received from the IRS detailing how he could file an administrative claim for refund, there is no evidence in the record that he followed those instructions or requirements before filing a claim for a tax refund in this court. After careful review, the court finds that, in his Count One, plaintiff has not pled any claims that fall within the jurisdiction of this court, and Count One must be dismissed for lack of subject matter jurisdiction.

Plaintiff's second count, "Count 2 Breach of Trust," and third count, "Count 3 Breach of Trust," like plaintiff's allegations in Count One, are very difficult to follow, with allegations which appear largely to challenge the actions of state officials in DeKalb County and in Indiana, including the Attorney General of Indiana, also with a reference to an Illinois official. They are quoted below to demonstrate how difficult the allegations are to follow:

> We provided appointment letters to the Superior Court I, Auburn Indiana; appointment of Executor, appointment of Minister Plenipotentiary, and as the eldest living son of Dorothy shown in book G32 page 71 in Dekalb county, requesting an accounting of case 17D01-1802-MF-000015 CUSIP 315794370 for my late 92 year old widowed mother, who was foreclosed upon even though the evidence was provided to the court that any purported loan was paid. My subsequent attempts to obtain an accounting of the proceeds which show a surplus overage from the "sale" reflecting an $8,305.82 difference collected over the amount due in the "order" have been denied three times as they maintain that I am not a party of interest. ((see

attachment G) This is patently untrue, I provided appointment letters, and as the eldest living son of Dorothy Curie, I may be the only real party of interest. I am unable to complete the terms of her last will and testament without the accounting and remittances. Per the same reasons cited below regarding Duty to Inform under UTC, we are seeking an accounting to secure our securities.

1. If no accounting is provided, we have a duty to recreate the accounting in good faith. See attachment H. We claim our security interests listed thereon. The County is not titled to the securities issued AND the property.

In "Count 3 Breach of Trust," plaintiff alleges a breach of trust, which, in part, overlaps with plaintiff's allegations in Count 2 regarding an alleged inter vivos trust against an unidentified entity he calls "A6." Plaintiff asserts:

1. We have provided appointment letters to the alleged custodian of unclaimed property requesting an accounting of the estate/inter vivos trust. We have no accounting, no trust indentures from the state, no distributions, nor any substantive response from the Attorney General of Indiana. We now make claim in the Federal Claims Court. (see attachment I)

2. **There is no evidence that the AG does not have the Duty to Inform Under the Uniform Trust Code:**
The UTC's provisions on the duty to inform provide answers to four crucial questions. The first question is: To which beneficiaries does the trustee owe the duty? Under the UTC, the duty to inform is owed to some extent to all of the trust's beneficiaries, whether they hold present interests or future interests, vested or contingent, in the trust, but the extent of the duty varies with the proximity (or, conversely, remoteness) of the beneficiary's interest.

The Trustee must:
(1) furnish "upon request . . . **a copy of the trust instrument**," meaning "a complete copy of the trust instrument and not merely . . . those portions the trustee deems relevant to the beneficiary's interest;"
(2) furnish upon request "at least annually and at the termination of the trust . . . a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, their respective market values" (referred to as a "UTC Trust Report");
(3) upon request, provide notice "within 60 days after accepting a trusteeship . . . of the acceptance and of the trustee's name, address, and telephone number;"
(4) upon request, provide notice within 60 days after the date the trustee acquires knowledge of the creation of an irrevocable trust, or the date the trustee acquires knowledge that a formerly revocable trust has become irrevocable . . . , of the trust's existence, of the identity of the settlor or settlors, of the right to request a copy of the trust instrument, and of the right to a . . . [UTC Trust Report]; and

(5) upon request, provide notice "in advance of any change in the method or rate of the trustee's compensation."

There is no evidence that these trust indentures are not applicable:

RE: U.S. Federal Person "CHRIS DAVID CURIE" Taxpayer identification/ ,Decedent's Social Security Number: [redacted[9]]

Note: Prior notice given to the United States, 2848, Form 56 via various registered and certified mail numbers.

To whomever UNITED STATES Business Entity this may concern (who commercially-operates on United States *Public* Markets and excepts and/or exchanges in United States Currency while providing goods and/or services to U.S. Customers/Consumers in everyday commerce).

The above-mentioned U.S. Federal Public Person has a Pre-Paid Non-obligatory Commercial Debt arrangement with the UNITED STATES in relation to **12 U.S. Code §95a[10]-Regualation of Transactions in foreign exchange of gold and silver; property transfers; vested interests, enforcement and penalties (Part 2) and other *Public Policy on U.S Debt.***

Your Business Entity is *federally-bound* to UNITED STATES and U.S. *Public* Debt Obligations by way of your Internal Revenue Service Employer Identification Number (The I.R.S. being under the U.S. Department of the Treasury) and your Federal Reserve Bank Account.

Your Business is hereby ordered to itemize whatever and however many Commercial Products and/or Services in which the above U.S. Federal *Public* Person wishes to commercially-acquire, adjust the bottom line total cost amount to zero ($0.00) and release items. Provide a receipt to the above named U.S. Federal Person, by way of it's Duly Authorized Representative ("Chris-David  Sui Juris/De jure/In Proper Person") and retain the record of the transaction to settle with your Federal Tax Obligation(s) with Internal Revenue Service as the entire overall transaction is only a Commercial Accounting Matter of what the Bankrupt UNITED STATES owes it's *Trust Creditors*, which is the American People, in direct relation to the borrowed gold and National Banking Emergency Act of 1933. All Commercial and *Public* Debt-Obligations, while transacting all business

---

[9] Plaintiff's social security number has been redacted.

[10] The statute at 12 U.S.C. § 95a (2012) gave the President additional authority, including the ability to "require the production, or if necessary to the national security or defense, the seizure of any books of account, records, contracts, letters, memoranda, or other papers, in the custody or control of such person," and is not a jurisdictional statute for this court, nor is it relevant to plaintiff's case. *See* 12 U.S.C. at § 95a(1). The language of the statute at 12 U.S.C. § 95a (2012) is now codified at 50 U.S.C. § 4305(b) (2018).

withing the UNITED STATES Commercial Markets belong to the UNITED STATES, as the UNITED STATES is the *Trust Obligor* each and every U.S. Commercial Transaction.

**Any Willful Dishonoring and/or Non-Settlement of the UNITED STATES Commercial "Public-Debt" Obligation Matters, by any Duty-Bound Commercial Business Entity within the United States, will result in Federal Prosecution to the fullest extent possible.**

(emphasis in original).

The allegations included by plaintiff in Counts Two and Three appear not to be against the United States or its employees. Plaintiff has not properly identified a constituent individual, department or agency of the United States as a party to the transactions he alleges in Counts Two and Three were mishandled. Both counts are confused, as plaintiff tries to invoke unrelated citations such as the Uniform Trust Code to request "an accounting of the estate/inter vivos trust" and "adjust" plaintiff's "bottom line total cost amount to zero ($0.00) and release items." It is well established that this court lacks jurisdiction to hear claims against state, local officials, or private individuals or entities, who are not federal employees. See United States v. Sherwood, 312 U.S. 584, 588 (1941) (noting that "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court [United States Court of Claims]" (alteration added) (citing United States v. Jones, 131 U.S. 1, 9 (1889); Lynn v. United States, 110 F.2d 586, 588 (5th Cir. 1940); Leather & Leigh v. United States, 61 Ct. Cl. 388 (1925)); see also Brown v. United States, 105 F.3d at 624 ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials."); Cooper v. United States, 137 Fed. Cl. 432, 434 (2018) (finding that the United States Court of Federal Claims "lacks subject matter jurisdiction to consider plaintiff's claims to the extent they are made against individuals"); Robinson v. United States, 127 Fed. Cl. 417, 420 (2016) ("The court is without 'jurisdiction over claims against individuals.'" (quoting Emerson v. United States, 123 Fed. Cl. 126, 129 (2015))); Merriman v. United States, 128 Fed. Cl. 599, 602 (2016) ("The United States Court of Federal Claims does not have subject matter jurisdiction over claims against private individuals or state officials." (citing United States v. Sherwood, 312 U.S. at 588)); Hicks v. United States, 118 Fed. Cl. 76, 81 (2014); Bey v. United States, No. 20-906C, 153 Fed. Cl. 814, 818–19 (Fed. Cl. May 19, 2021) (holding that the United States Court of Federal Claims does not have jurisdiction over claims against state and local agencies); Cottrell v. United States, 42 Fed. Cl. 144, 148 (1998); Reid v. United States, 95 Fed. Cl. 243, 248 (2010) ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court [the United States Court of Federal Claims] has no jurisdiction to hear those allegations." (alteration added) (quoting Moore v. Pub. Defs. Office, 76 Fed. Cl. 617, 620 (2007))). Therefore, the court does not have jurisdiction over any allegations by plaintiff regarding actions of these state, local, or private agencies or entities. Plaintiff does not offer a proper jurisdictional basis in the United States Court of Federal Claims for his claims included in Counts Two and Three. Without establishing a proper jurisdictional basis for his claims, Counts Two and Three of

plaintiff's complaint, both titled "Breach of Trust," must be dismissed for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

Moreover, plaintiff's claims in Counts Two and Three, as well as Count One, must be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim because plaintiff's complaint does not coherently present his claims. When examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2); see also Bell Atl. Corp. v. Twombly, 550 U.S. at 555. The United States Supreme Court has stated:

> While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid. [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216 pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim that relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56, 570 (footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–57, 570); First Mortg. Corp. v. United States, 961 F.3d 1331, 1339 (Fed. Cir. 2020); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied, (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354–55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a

claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Avant Assessment, LLC v. United States, 159 Fed. Cl. 632, 636 (2022) ("As the Supreme Court explained, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" (quoting Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570))); Christen v. United States, 133 Fed. Cl. 226, 229 (2017); Christian v. United States, 131 Fed. Cl. 134, 144 (2017); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Hous. Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, 579 F. App'x 1004 (Fed. Cir. 2014); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726–27 (2010); Legal Aid Soc'y of N.Y. v. United States, 92 Fed. Cl. 285, 292, 298 n.14 (2010).

Despite the less stringent pleading standard accorded to pro se plaintiffs, Mr. Curie's complaint does not meet the basic requirements, nor does it cite to a legal basis to establish jurisdiction in this court. See Riles v. United States, 93 Fed. Cl. at 165 ("While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d at 1359)); see also Schallmo v. United States, 147 Fed. Cl. at 363; Hale v. United States, 143 Fed. Cl. at 184 ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. at 499)); Golden v. United States, 129 Fed. Cl. at 637; Shelkofsky v. United States, 119 Fed. Cl. at 139 ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d at 799)); Harris v. United States, 113 Fed. Cl. at 292 ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)). Plaintiff's confused and confusing allegations fail to meet the most basic standards to sufficiently plead a viable complaint in this court and, therefore, fail to state a claim.

## CONCLUSION

For the reasons discussed above, this court does not have jurisdiction to review the allegations included in plaintiff's complaint. Plaintiff's stream of consciousness allegations fail to state an understandable or cognizable claim or meet the jurisdictional requirements to file a complaint in this court. Therefore, defendant's motion to dismiss is

**GRANTED** and plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

       **IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**